## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CRIMINAL ACTION NO. 3:04-CR-00161-GCM-DCK

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | **ORDER** |
| MARIO ALBERTO REYES, | |
| Defendant. | |

**THIS MATTER** comes before the Court on Defendant Mario Alberto Reyes' second pro se Motion for Compassionate Release (ECF No. 101). The government filed a response and an accompanying exhibit (ECF No. 105 & 106). The matter is now ripe for disposition. For reasons discussed in more detail below, the Court will grant the motion.

### I.    BACKGROUND

Mario Alberto Reyes is serving a 21-year prison sentence for his role in a drug trafficking crime. In January 2004, Reyes and two associates arranged to sell cocaine to a buyer who—as it turned out—was cooperating with the Charlotte-Mecklenburg Police Department. ECF No. 71 at ¶¶ 8–9. Police officers and agents from the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) arrested the three men in a shopping center parking lot. *Id*. The men were in a white van containing more than a kilogram of cocaine. *Id*. ¶¶ 9–10. Reyes, then 41 years old, had a loaded .32-caliber pistol concealed in the sleeve of his jacket. *Id*. ¶ 9.

A federal grand jury indicted Reyes for (1) conspiracy to possess with intent to distribute at least 500 grams of cocaine, in violation of 21 U.S.C. §§ 841 and 846; (2) possession with intent to distribute at least 500 grams of cocaine and aiding and abetting the same, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2; (3) possessing a firearm unlawfully as a convicted felon, in

violation of 18 U.S.C. § 922(g)(1); and (4) possessing a firearm in furtherance of a drug-trafficking offense in violation of 18 U.S.C. § 924(c). *See* ECF No. 1. The United States also filed informations under 21 U.S.C. § 851 and 18 U.S.C. § 3559(c). *See* ECF No. 2, ECF No. 34. Both of those statutory provisions enhanced the penalties for Reyes' offenses. As a result of the 18 U.S.C. § 3559(c) information, Reyes was facing a mandatory life sentence. He decided to plead guilty to conspiracy and violating § 924(c). In exchange, the United States withdrew the 21 U.S.C. § 3559(c) information and dismissed Reyes' other two charges. *See* ECF No. 43 at 1–2.

The United States Probation Office prepared a presentence report. Because Reyes had previously been convicted in Texas of burglary, arson, and delivery of controlled substances, the probation officer determined that Reyes was a "career offender" under U.S.S.G. § 4B1.1. ECF No. 71 ¶ 24. That determination increased the offense level of Reyes' conspiracy offense from 23 to 34,[1] which catapulted the Guidelines range from 92–115 months, to 262–327 months. *Id.* at 6–7; *see* U.S.S.G. ch. 5 pt. A (sentencing table).[2] Reyes also faced a consecutive mandatory minimum sentence of 60 months for violating § 924(c). As a result, Reyes' total Guidelines range was 322 to 387 months.[3] ECF No. 71 ¶ 64.

At sentencing, the Court imposed a below-Guidelines sentence of 200 months on the conspiracy charge, plus a 60-month mandatory sentence on the § 924(c) charge. ECF No. 55 at 2. In all, Reyes received a 260-month term of imprisonment, to be followed by five years on supervised release. *Id.* at 2–3.

---

[1] These figures include a three-level adjustment for acceptance of responsibility. *See* ECF No. 71 ¶ 25.
[2] Reyes was sentenced using the 2004 Guidelines. ECF No. 71 ¶ 18.
[3] The PSR indicated that the Guidelines sentence for violating § 924(c) was life imprisonment, because the Government had not yet withdrawn the 18 U.S.C. § 3559(c) information. ECF No. 71 ¶ 64.

2

In September 2016, Reyes filed a pro se Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. In the § 2255 motion, Reyes argued that the Supreme Court's holding in *Johnson v. United States*, 576 U.S. 591 (2015) meant that he no longer qualified as a career offender. In *Johnson*, the Supreme Court struck down the so-called "residual clause" of the Armed Career Criminal Act (ACCA). The career offender provision of the Sentencing Guidelines, § 4B1.2, contains language that is identical to ACCA's residual clause. Reyes accordingly claimed that he could not qualify as a career offender because the residual clause of § 4B1.2 was also unconstitutional. The Court dismissed the § 2255 motion: "Assuming without deciding that the holding in *Johnson* served to invalidate the residual clause of the career offender provision . . . Petitioner would still be entitled to no relief because his controlled substance offense undoubtedly qualifies as a predicate conviction, and his arson and burglary of a habitation convictions each qualify as enumerated felony offenses, thus the residual clause of the Guidelines has no impact on the validity of these convictions." ECF No. 90 at 4.

In July 2021, Reyes filed a pro se Motion for Compassionate Release (ECF No. 96). Reyes argued that his age, health conditions, and the COVID-19 pandemic were grounds for modification of his sentence. He also claimed that compassionate release was appropriate because he should not have been sentenced as a career offender. This time, Reyes cited the Supreme Court's holding in *Mathis v. United States*, 136 S. Ct. 2243 (2016), which clarified how to properly determine whether a prior conviction constituted a "crime of violence" under ACCA. The Court denied his motion, concluding that Reyes had properly been classified as a career offender, that his age, health problems, and the pandemic did not constitute "extraordinary and compelling reasons" for release, and that the § 3553(a) sentencing factors weighed against release. ECF No. 100 at 4.

Less than a month after the Court issued its decision, Reyes filed the present motion.[4] The grounds asserted in the motion were essentially the same as the first. However, Reyes now cited a Fifth Circuit case, *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016), in support of his claim that he would not be classified as a career offender if sentenced today.

## II. DISCUSSION

### a. Legal Standard

A court can reduce a defendant's sentence under the compassionate release statute if (1) "extraordinary and compelling reasons" warrant a reduction; (2) the reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the § 3553(a) sentencing factors merit a reduction. *See* 18 U.S.C. § 3582(c)(1)(A).

Courts presently enjoy significant discretion in determining what qualifies as an "extraordinary and compelling reason" for release. In *United States v. McCoy*, the Fourth Circuit explained that "district courts are empowered to consider *any* extraordinary and compelling reason for release that a defendant might raise." 981 F.3d 271, 284 (4th Cir. 2020) (cleaned up). That is because—moving to the second requirement for granting compassionate release—there currently are no applicable policy statements issued by the Sentencing Commission.[5] *Id*.

However, even if a defendant shows "extraordinary and compelling reasons," a trial court must still make an "individualized assessment" of each defendant's sentence, comprising a "full consideration of the defendant's individual circumstances." *Id* at 286. That assessment revolves

---

[4] There is no prohibition against successive compassionate release motions. *United States v. Holt*, 849 F. App'x 63, 63 (4th Cir. 2021).

[5] Courts may (but need not) refer to U.S.S.G. § 1B.13, which governs BOP-filed motions for compassionate release. *McCoy*, 981 F.3d at 282 n.7. The commentary to that section identifies factors like the medical condition of the defendant, the age of the defendant, and family circumstances. *See* U.S.S.G. § 1B.13 cmt. 1.

4

around consideration of the so-called § 3553(a) factors. Under the compassionate release statute, courts must consider the factors from 18 U.S.C. § 3553(a) "to the extent that they are applicable" in deciding whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A). Those factors include (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes by the defendant; and (4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See id.* § 3553(a). Courts may also consider, as part of the individualized assessment, a defendant's relative youth at the time of his offense, the length of the sentence that has already been served, and the institutional records and rehabilitative steps taken by each defendant while incarcerated. *McCoy*, 981 F.3d at 286.

### b. Analysis

The Court now applies the legal standard discussed above to the facts of Reyes' case. First, the Court considers whether Reyes has demonstrated "extraordinary and compelling reasons" warranting a sentence reduction. Next, the Court observes that there are no applicable policy statements. Finally, the Court conducts an "individualized assessment" of the propriety of a sentence reduction in Reyes' case, centered on the § 3553(a) factors.

### i. Extraordinary and Compelling Reasons

Reyes asserts three bases for a sentence reduction: (1) his age, which purportedly makes him vulnerable to COVID-19; (2) a "bad hip and knee joint" that make him "vulnerable to assault

within prison"; and (3) the fact that he would not be classified as a career offender if sentenced today.[6] ECF No. 101 at 5.

The Court finds the first two grounds uncompelling. Starting with age as a COVID-19 risk factor, it is true that Reyes' age (59) is associated with increased rates of mortality and hospitalization due to the SARS-CoV-19 virus. According to the Centers for Disease Control and Prevention (CDC), an individual between the age of 50 and 64 is four times as likely as to be hospitalized as an individual between the ages of 18 and 29. *See* Centers for Disease Control and Prevention, *Risk for COVID-19 Infection, Hospitalization, and Death by Age Group* (Nov. 22, 2021), https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-age.html. An individual in Reyes' age cohort is also 25 times more likely to die from SARS-CoV-19 than a young person. *Id*. However, the widespread availability of vaccines and therapeutics have dramatically reduced the threat that the virus poses to most individuals. *See United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021) (Easterbrook, J.) ("Today . . . vaccines provide a much better defense against infection than any judicial order could do."). Notably, the death rate for a vaccinated individual of Reyes' age is 0.6 deaths per 100,000 people. Caitlin Owens, *Age Is Still a Huge Coronavirus Risk Factor*, Axios (Oct. 19, 2021), https://www.axios.com/age-coronavirus-risk-vaccines-2e1391b0-5d0e-4fa9-894b-4b894dc017c9.html.

The Court is also unpersuaded that Reyes' hips and knees constitute "extraordinary and compelling reasons" for release. Reyes states that he does not require durable medical equipment,

---

[6] Reyes also alleged that his sentence was "unfair and excessive" given his nonviolent offense. The Court considers those grounds duplicative of his third argument.

assistance with self-care, or assisted living. ECF No. 101 at 12. And his motion indicates that his conditions are being managed in prison. *See id.* (noting prescriptions for Meloxicam and aspirin).

Reyes' final claim of "extraordinary and compelling reasons" relates to his career offender status. Reyes asserts that he would not be classified as a career offender if sentenced today. He is correct. Reyes' prior Texas convictions for delivery of controlled substances and burglary of a habitation no longer qualify as "controlled substance offense[s]" or "crime[s] of violence" under U.S.S.G. § 4B1.1.[7] *See Hinkle*, 832 F.3d at 576–77; *United States v. Wilson*, 622 F. App'x 393, 404–05 (5th Cir. 2015).

The government argues, however, that "this fact does not amount to an extraordinary and compelling reason justifying Reyes' compassionate release." ECF No. 105 at 7. Courts are divided on the question. Some, including district courts in the Fourth Circuit, have found that sentencing disparities related to career offender status do constitute "extraordinary and compelling reasons." *See United States v. Trice*, Case No. 7:13CR00034-001, 2021 WL 402462, at *3 (W.D. Va. Feb. 3, 2021); *United States v. Shaw*, Case No. 5:13-cr-00025, 2021 WL 3007266, at *4–5 (W.D. Va. July 15, 2021); *United States v. Kanohokula*, CR. NO. 11-00976 JMS (01), 2021 WL 5411211, at *4–6 (D. Haw. Nov. 18, 2021). Other courts have found that they do not. *See United States v. Nelson*, Case No. 1:08-cr-068, Case No. 1:08-cr-069, 2021 WL 4306100, at *5–6 (S.D. Ohio Sep. 22, 2021); *United States v. Gharib*, Case No. 4:14-CR-53(1), 2021 WL 3612086, at *9 (E.D. Tex. Aug. 13, 2021).

---

[7] Reyes also has a prior 1989 Texas conviction for arson. ECF No. 71 ¶ 32. That crime constitutes a predicate offense for career offender status. U.S.S.G. § 4B1.2(a)(2) (identifying arson as a "crime of violence"). However, because Reyes has not committed two predicate offenses, he would not be eligible for career offender status if sentenced today. *See id.* § 4B1.1(a).

The Fourth Circuit has not ruled on the matter. However, the *McCoy* decision strongly indicates that career offender status may constitute an "extraordinary and compelling reason" for two reasons. First, district courts have broad discretion in recognizing "extraordinary and compelling reasons," encompassing "*any* extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228 (2d Cir. 2020)). And second, in the § 924(c) stacking context, the *McCoy* Court found "extraordinary and compelling reasons" based on (1) the sheer and unusual length of defendants' sentences; and (2) the disparity between those sentences and those now considered appropriate. *See id*. at 285. Both of these factors also appear in the career offender context.

Here, Reyes was sentenced to 200 months on the conspiracy offense, plus a 60-month mandatory sentence on the § 924(c) offense. ECF No. 55 at 2. That 260-month sentence was lenient compared to his Guidelines sentence, which called for an aggregate sentence of 322–387 months. However, the length of Reyes' sentence was still "sheer and unusual" in absolute terms. The median sentence for career offenders convicted of murder in 2006 was 265 months.[8] In other words, Reyes' (sharply reduced) sentence for two nonviolent offenses was nearly as harsh as the typical sentence for murder.

Reyes' sentence was also far more punitive in 2006 than it would have been in 2021. If Reyes had been sentenced in 2021, the offense level for his conspiracy offense would have been

---

[8] United States Sentencing Commission, *Sourcebook of Federal Sentencing Statistics, Table 14: Average Length of Imprisonment for Offenders in Each Criminal History Category by Primary Offense Category*, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2006/table14_0.pdf.

21, and his criminal history category would have been VI.[9] His Guidelines sentence would have been 120 months.[10] For the § 924(c) charge, Reyes would have faced a mandatory minimum sentence of 60 months. In all, Reyes would have faced a total Guidelines sentence of 180 months.

Based on the severity and disparity of Reyes' sentence, the Court concludes that Reyes has established "extraordinary and compelling reasons" for a sentence reduction.

### ii. Applicable Policy Statements

The Court next considers applicable policy statements. As the Fourth Circuit ruled in *McCoy*, there are presently no applicable policy statements to consult under 18 U.S.C. § 3582(c)(1)(A).[11] 981 F.3d at 283. The Court now proceeds to the Section 3553(a) factors.

### iii. Section 3553(a) Factors

Even when "extraordinary and compelling" reasons supporting a sentence reduction are present, compassionate release is not warranted unless the § 3553(a) factors also merit a reduction. *See id.* at 271. That is because compassionate release judgments are the "product of individualized assessments of each defendant's sentence." *Id.* at 286. The § 3553(a) factors support a reduction in Reyes' sentence.

---

[9] The base offense level would be 24. Given a three-level adjustment for acceptance of responsibility, the total offense level would be 21. Reyes would have had 13 criminal history points.

[10] This assumes that the enhancement under 21 U.S.C. § 851 would still be in effect. The truth of the assumption is by no means certain, given the government's diminishing use of that statute. *See* United States Sentencing Commission, *Application and Impact of 21 U.S.C. § 851: Enhanced Penalties for Federal Drug Trafficking Offenders* 12, 18–19, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2018/20180712_851-Mand-Min.pdf.

[11] In resolving Reyes' first compassionate release motion, the Court referred to the commentary to U.S.S.G. § 1B1.13, which can sometimes provide "helpful guidance even when motions are filed by defendants." *McCoy*, 981 F.3d at 282 n.7. That section, however, is not binding on the Court, and the Court does not consider it today in light of Reyes' meritorious arguments related to his career offender status.

9

### 1. Nature and Circumstances of the Offense

The Court begins with the nature and circumstances of the offense. *See* 18 U.S.C. § 3553(a)(1). Here, Reyes was involved in an undoubtedly serious offense—a conspiracy to distribute a large amount of cocaine. And Reyes was also carrying a loaded firearm during the commission of the offense. On the other hand, Reyes is correct that his offense was nonviolent. On balance, this factor—viewed against contemporary punitive standards for similar conduct— tips in favor of a sentence reduction.

### 2. History and Characteristics of the Defendant

Next, the Court turns to the history and characteristics of the defendant. Reyes was 41 at the time of his offense. ECF No. 71 at 2. At that time, Reyes already had a lengthy criminal history spanning decades, including convictions for violent offenses. *Id.* at 8–11. In 1989, Reyes threw a Molotov cocktail at the front door of a dwelling, but no one was apparently hurt. *Id.* at 8. In 1997, Reyes stabbed a roommate in the lower abdomen after an argument. *Id.* at 9. He pled guilty to misdemeanor assault. These facts militate against a sentence reduction because they suggest that Reyes' crimes were not the one-off product of immature judgment. *See United States v. Ross*, Criminal Action No. 5:94-cr-00005-KDB, 2021 WL 4005615, at *4 (W.D.N.C. Sept. 2, 2021).

On the other hand, Reyes is now 59 years old and reports health problems affecting his hips and knees. Those factors make recidivism less likely, and support a sentence reduction. *See United States v. Howard*, 773 F.3d 519, 533 (4th Cir. 2014) ("[S]tudies demonstrate that the risk of recidivism is inversely related to an inmate's age."); United States Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders* 23 (2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-

publications/2017/20171207_Recidivism-Age.pdf (finding that only 9 percent of federal offenders 55 to 59 years old were reconvicted).

The Court turns to Reyes' record in prison. In 15 years of incarceration, Reyes has not incurred a single disciplinary infraction. *See* ECF No. 85 at 2; ECF No. 106. That factor is significant, suggesting that Reyes is capable of conforming his conduct to the rules and expectations set by prison authorities. The government asserts that Reyes has only completed six educational programs and work assignments, arguing that this indicates that Reyes has made "little effort to prepare himself for a productive and law-abiding life outside of prison." ECF No. 105 at 7. However, the record in this case suggests that Reyes has completed far more than six educational programs and work assignments. Indeed, the exhibit submitted by the government identifies six programs completed by Reyes "[s]ince September 9, 2015." ECF No. 106 (emphasis added). The government may have overlooked a previous PSR supplement filed on the docket in September 2015. It lists 21 other completed programs and work assignments, including drug treatment and education courses, parenting classes, anger management, and a GED. *See* ECF No. 85 at 2. As a result, the Court concludes that Reyes' record in prison weighs in favor of a sentence reduction.[12]

Based on the totality of this "individualized assessment," *McCoy*, 981 F.3d at 286, the Court concludes that a sentence reduction is appropriate.

### 3. Propriety of the Sentence

Reyes has served 193 months of credited time in the BOP—which is more time than he likely would have faced had he been sentenced in 2021. The Court concludes that based on the foregoing analysis, Reyes' sentence should be reduced to time served. Consistent with the original

---

[12] Even if Reyes had only completed six educational classes, the Court would have reached the same conclusion about Reyes' motion.

sentence, the Court will also impose a five-year term of supervised release. The Court finds that this sentence is sufficient, but not greater than necessary, to accomplish the sentencing goals advanced by § 3553.

### III.     ORDER

**IT IS THEREFORE ORDERED** that Reyes' Motion for Compassionate Release (ECF No. 101) is **GRANTED**. Reyes' term of imprisonment shall be **REDUCED TO TIME SERVED**, to be followed by five years on supervised release. The Order shall be **STAYED** for 14 days in order to permit the Bureau of Prisons and the U.S. Probation Office to make the necessary arrangements.

**SO ORDERED**.

Signed: December 14, 2021

Graham C. Mullen
United States District Judge

12